No. 31,040

D. E. Reber, *Appellant*, v. Hazel Neibling, as County Clerk of . Brown County, and The Board of County Commissioners of the County of Brown, *Appellees*.

(26 P. 2d 269.)

Opinion filed November 11, 1933.

*W. E. Archer*, of Hiawatha, for the appellant.

*Lloyd S. Miller*, county attorney, and *F. M. Pearl*, of Hiawatha, for the appellees.

The opinion of the court was delivered by

Dawson, J.: This was an action to test the validity of the method of assessing farming lands in Brown county.

Plaintiff owns two farms, each bounded on two sides by public roads. Their legal descriptions are as follows:

1. Northwest quarter section 35, town 1 south, range 15 east, less 7.4 acres owned by the St. Joseph and Grand Island Railroad Company.

2. West half of southwest quarter of section 26, town 1 south, range 15 east.

On the west side of these farms a public road, sixty-six feet wide, runs north and south. Between the two farms another public road of similar width runs east and west. On the northwest corner of the larger farm the highway authorities appropriated 13/100's of an acre for a rounding corner at the intersection of these public roads.

It was conceded that the acreage of the two farms as described in terms of government survey was diminished for all practical purposes to the extent of almost seven acres (6.95 acres to be exact) by these public roads—about four acres off the larger farm and three acres off the smaller.

By consent of counsel the trial court dictated into the record another admission which reads:

"THE COURT: It is admitted by the defendants that it is their intention, unless restrained or enjoined, to tax the farm lands of the plaintiff, owned by the plaintiff, without allowing any deductions for the public highways or for the rounding corner . . . which it has been stated by the plaintiff has been used for road purposes and in which the county has merely an easement."

Other agreements and admissions of counsel and evidence shown without dispute may be thus summarized:

The fee to the 80-acre farm and the 160-acre farm diminished by the railway right of way was in the plaintiff; that the deeds under which he held were in substantially the same terms as those of the original government patents; that no deeds or less important convey-ances for highways had ever been executed by the original patentees or by any one holding under them; and that when the plaintiff's lands have been the subject matter of conveyances they have been described in terms of government survey without mention of any diminished acreage on account of the adjacent public roads.

A page of the assessor's field book, exhibit "A," supplied by the state tax commission, containing pertinent entries made therein by the deputy assessor, was introduced in evidence. (See page 333.)

The deputy assessor testified that he made the entries and valuations shown in exhibit A:

"Q. Just tell the court the things you took into consideration in fixing a value on Mr. Reber's land, highways and everything. A. Well, the law says land shall be assessed at its fixed value and of course that is pretty hard to arrive at. First, going to a place, I try to look at it without improvements, as though we had wiped all the improvements away, and then take into consideration the waste land, the road land and all that, and make my estimation according to that.

"Q. And you did that in this case? A. Yes, sir.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

*Cross-examination.*

"Q. You didn't deduct the road land? A. I have no right to deduct it. He has got so many acres there, but we take into consideration the waste land.

"Q. There are about seven acres of land used for road purposes? A. In taking your estimate, you know you go about an acre to eighty rods, or in other words, I would consider it in the neighborhood of that.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"Q. Yes, now, you did not deduct, in your valuation and assessment for the purpose of taxation made in the year 1930, that seven acres of land—you did not deduct about seven acres of land used for the purpose of public highways

TAX COMMISSION FORM 3A (REVISED 1929).

## FIELD BOOK FOR REAL ESTATE ASSESSMENT IN MORRILL TOWNSHIP, BROWN COUNTY, 1932

| To Whom Assessed and Post-office Address | Description | S. T. R. Lot | Blk. | School District Number | Rural H. S. District Number | Number Acres Farming Land | Value Per Acre | Number Acres Pasture Land | Value Per Acre | Total Number Acres | Total Value of Land Dollars | Value of Dwelling Dollars | Value of Barns Dollars | Value of All Other Improvements Dollars | Total Value of Improvements Dollars | Total Value by Assessor Dollars |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Name—D. E. Reber | NW¼ less 7.4 a. for G. I. Ry. | 35 | | 34 | | 137 | $105 | 15 | $105 | 152.6 | 16023 | 600 | 400 | 200 | 1200 | 17223 |
| Name—D. E. Reber | W½ SW¼ | 26 | | 34 | | 70 | $110 | 10 | $110 | 80 | 8800 | 800 | 400 | | 1200 | 10000 |

By S. C. Flickinger, Deputy Assessor.

"Exhibit 'A'"

taken from Mr. Reber's land? A. Not directly. Indirectly, I did, I would say.

"Q. And you valued that land, Mr. Flickinger, you valued the quarter at $105 per acre, did you not? A. Yes, sir.

.    .    .    .    .    .    .    .    .    .    .    .

"BY THE COURT: You mean you valued each acre of waste land and everything, or was that an average, or how did you arrive at it? A. I had to arrive at an average. My field book showed me so many acres, see, but I say directly, or indirectly, it wouldn't be that because I had to take that in consideration with the waste land. . . .

"BY THE. COURT: You looked over the land before you assessed it? A. Yes, sir.

.    .    .    .    .    .    .    .    .    .    .    .

"BY THE COURT: And took into consideration the amount of tillable land and the amount of waste land for any reason, whether used for road, or creek? A. House lot and all.

"BY THE COURT: For everything? A. Yes, sir.

"Q. For the purposes of the assessment made by you for the year 1930 you valued seventy acres on the north side of the road at $110 an acre, did you not? A. Whatever the records show. I supposed it would be eighty acres, isn't it, or a total of eighty, probably ten acres of pasture and seventy acres, would be eighty acres, the total.

"Q. And then you multiplied the value per acre for the quarter by the number of acres in the land, and made for the quarter your valuation of $17,223 in all, is that right? That's on the quarter at $110. A. Yes, sir.

"Q. And you made your assessment and valuation on the eighty north of the road owned by Mr. Reber at $110 an acre, or $10,000, did you not? A. Yes, sir; that is, the improvements and all.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"*Direct Examination.*

"Q. Mr. Flickinger, let me ask you if when you were making a survey arriving at the reasonable value for taxation of Mr. Reber's land—I will ask you to tell the court if in doing that you took into consideration the fact that Mr. Reber owned the fee simple to the entire quarter? A. Yes, sir.

.    .    .    .    .    .    .    .    .    .    .    .

"A. That is, less the railroad."

The trial court denied the injunctive relief sought by the plaintiff and gave judgment for defendants.

Plaintiff appeals. On his behalf it is contended that exhibit A demonstrates that the assessor paid no attention to the acreage devoted to the public roads alongside these farms, but assessed them exactly as if plaintiff had the full and exclusive use of 152.6 acres in the one farm and 80 acres in the other. It cannot be denied that

a casual examination of the assessor's entries in the field book prepared for his use by the state tax commission would sustain that contention. The legal question is not quite so simple, however. The pertinent statutes provide:

R. S. 79-1401 authorizes the state tax commission to provide a uniform method of keeping the tax rolls and books relating to taxation, and directs it to formulate and send to each county all necessary forms for use in listing and assessment of property.

R. S. 79-408 requires the county clerk to prepare the assessment rolls, and directs that they shall contain correct and pertinent descriptions of each parcel of real estate. To effect this, the county clerk is directed to consult the transfer record in his office, and the records and plats in the office of the register of deeds and reports from United States land offices. When the assessment rolls are thus prepared, the county clerk is required to deliver them to the county assessor, unless he is *ex officio* county assessor. (R. S. 79-1411.) In either case there is a field book prepared for the use of the deputy assessor. Included in its preparation there should be full and complete legal descriptions of the real estate within the assessment district to which the deputy assessor has been assigned, and it should contain suitable space for reporting pertinent facts relating to the real estate and real-estate values as the tax commission may require. From day to day the deputy assessor is required to detach leaves of his field book and forward them to the county assessor where the pertinent data are transferred to the assessment rolls.

R. S. 79-403, 79-411 and 79-501 go further into details touching the deputy assessor's duties. He is required to determine the proper valuations from whatever sources of information are available. He should view the property and consult the owner or his agent to arrive at its actual value.

In the light of the statutes just summarized, it seems to us that the deputy assessor's testimony, quoted above, as well as the facts stipulated, shows sufficiently that plaintiff's lands were not illegally assessed. The statute requires that easements for railway rights of way over farming lands shall be deducted from the general acreage, for the excellent reason that the railway corporations are separately assessed therefor. (R. S. 79-602.) The statute does not specifically direct that the acreage of land devoted to public roads shall be deducted from the acreage of the farming lands to which they are

adjacent. The legal descriptions of farming land in terms of government survey, in which such lands appear in government patents, deeds, transfer records and the like, are the proper descriptions for use in matters of taxation. Moreover, the statute provides a method by which inaccurate real-estate descriptions may be corrected for purposes of taxation. (R. S. 79-410.)

The deputy assessor's testimony that he did take into account the road acreage in determining the proper valuation to place on plaintiff's farms cannot be overlooked or ignored. And as there is no contention that the assessed valuation of plaintiff's farms is out of line with that of his neighbors in that assessment district, it seems clear to us that the trial court correctly determined that it was without authority to meddle with the assessments.

Appellant projects a constitutional question into his argument, by suggesting that the road acreage was public property and therefore exempt from taxation under article 11, § 1, of the state constitution. It may be conceded that plaintiff's lands appropriated and used for public highways cannot be taxed as such to him; but since the record contains testimony to which the trial court gave credence and which was that the acreage used for public roads was in fact taken into consideration in determining the assessed value of plaintiff's farms, a majority of this court holds that plaintiff is in no position to complain.

The record contains no material error, and the judgment is affirmed.

DAWSON, J. (concurring specially): I concur in the decision but am not satisfied with the court's disposition of the constitutional question with which the majority opinion concludes. My own view is that while the public has the use of the 6.2 acres of plaintiff's lands for road purposes the ultimate fee thereof is in the plaintiff; and notwithstanding he is deprived of their use for agricultural purposes, those roads are highly valuable appurtenances to his farms and very far from being such a detriment thereto as should result in a diminution of their assessed valuation. In this view the constitutional question evaporates entirely.

I am authorized to say that Mr. Chief Justice JOHNSTON and Mr. Justice BURCH approve of this special concurrence.

HUTCHISON, J., not sitting.